IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 1:12-CR-47-1 |
| | § | |
| TIMOTHY WAYNE HARRIS, JR. | § | |
| a/k/a "J" and | § | |
| JERRY LEE EDWARDS | § | |

REPORT AND RECOMMENDATION ON
THE DEFENDANT'S COMPETENCY TO STAND TRIAL

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court for the Eastern District of Texas, this criminal proceeding is before the undersigned United States magistrate judge. Before the court is the issue of the Defendant's competency to stand trial pursuant to 18 U.S.C. § 4241. The Defendant is charged in a First Superseding Indictment on five counts: two violations of 18 U.S.C. § 2119, carjacking; two violations of 18 U.S.C. § 924(c)(1), brandishing a firearm in a crime of violence; and one violation of 18 U.S.C. § 2119, conspiracy to commit a carjacking.

## I. The Evidence

On June 6, 2012, the court first ordered a psychiatric or psychological exam to determine if the Defendant was suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (Docket No. 30.) The Defendant subsequently received an evaluation by Tiffany K. Brown, Psy.D., Forensic Psychologist at the Federal Detention Center in Los Angeles, California. Dr. Brown notes that Harris showed limited cooperation with the evaluation process and an unwillingness to answer legally focused

questions. Dr. Brown also found that that Harris has a poor understanding of the nature and consequences of the court proceedings against him and an impaired ability to cooperate and assist counsel in his defense, which suggest that he is not competent to stand trial. The accompanying letter from the Warden, L.R. Thomas, states that there is objective evidence to indicate that Mr. Harris suffers from a mental disorder that significantly impairs his present ability to understand the nature and consequences of the court proceedings against him, and his ability to properly assist counsel in his defense. Docket No. 70. At a hearing on October 11, 2012, the court adopted Dr. Brown's report and found Harris incompetent; Harris was subsequently remanded to the custody of the Attorney General for continued psychological treatment. Docket 36.

From November 29, 2012 until March 29, 2013, Harris underwent four months of mental health treatment to restore his competency to stand trial. Harris's second competency report detailing that treatment was filed on April 29, 2013, accompanied with a Certificate of Competency signed by the Warden for the U.S. Medical Center for Federal Prisoners. This report, completed by Lea Ann Preston Baecht, Ph.D., Forensic Psychologist at the U.S. Medical Center for Federal Prisons in Springfield, Missouri, states that Harris has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and can properly assist in the defense of claims brought against him in this case. Dr. Baecht noted that Harris presents as largely uncooperative with the evaluation process and refused to complete psychological testing or participate in competency-focused clinical interviews. Harris arrived at the hospital taking anti-psychotic medication, but reported to Dr. Baecht that he did not know when he began taking the medication or why it was prescribed. Dr. Baecht completed a very thorough report describing Harris's treatment and her ultimate findings. She determined

that Harris is malingering, which is defined as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." Docket No. 46, pg. 11. She cites to several factors as support for her conclusion: 1.) that Harris's onset of symptoms began after his arrest for the instant offense, 2.) none of his friends or family members ever mentioned past or current mental illness during phone calls with Harris, 3.) despite brief hospitalization for PCP intoxication, there is no indication he ever experienced symptoms of psychosis prior to his arrest, and 4.) Harris exhibited an inconsistent presentation across settings and situations, inconsistent with genuine mental illness. Dr. Baecht notes that the strongest piece of information to support a diagnosis of malingering is the content of Harris's phone calls made during his stay at the facility. Throughout these phone calls, Harris conversed in a clear and coherent manner with no display or endorsement of symptoms of mental illness, and even expressed awareness that his behavior during the current evaluation could extend his stay in the medical facility.

On July 3, 2013, Harris filed an unopposed motion for psychiatric exam pursuant to 18 U.S.C. § 4241 (determination of mental competency to stand trial) and 18 U.S.C. § 4242 (determination of the existence of insanity of the Defendant at the time of the offense), which was granted by the court. Docket No. 59. Ray Coxe, Ph.D. in Beaumont, Texas, examined Harris on September 13, 2013 at the LaSalle Correctional Facility. Dr. Coxe reported that Harris interrupted him and left the room without cooperating with the examination. Consequently, Dr. Coxe could not form an opinion as to Harris's competency.

A competency hearing on the foregoing reports was held on October 8, 2013. At the hearing, the Defendant appeared in court with counsel. Neither party objected to the

3

admissibility of the psychological report detailing the results and findings, and therefore, the court admitted it into evidence under seal. As proof of Harris's competency, the Government introduced Exhibit 1, which consists of 167 pages of medical records from Harris's four-month examination and treatment, and Exhibit 2, which consists of a CD of eleven phone calls between Harris and various family members. The Government summarized the content of the phone calls, claiming they show the Defendant engaging in meaningful conversation about a variety of topics.

The Defendant offered no exhibits at the hearing, but his counsel, Gary Bonneaux, Esq., proffered details of their relationship, which Bonneaux claims has been strained because of Harris's pattern of uncooperativeness. Mr. Bonneaux stated that he has met with Harris nine times since January 2013, and has never had effective communication because Harris walks away and will not discuss the case. Mr. Bonneaux reported that Harris is unfocused, unresponsive, frustrated, and refuses to answer questions. Mr. Bonneaux also proffered details of a conversation he had with Tim Harris, the Defendant's father. Mr. Harris indicated that his son, the Defendant, had been a promising student in high school, but had a noticeable behavioral change at age 16. Mr. Harris indicated that this change might be attributable to drug use, and in 2010 the Defendant was committed to a drug rehabilitation facility and treated for marijuana and PCP addiction. Mr. Harris does not think that his son understands the instant charges, and is not faking incompetency. Mr. Bonneaux also called the Defendant to testify, but for the limited purpose of establishing competency. Harris refused to answer questions and despite the opportunity to give a statement, chose to remain silent.

## II. Standard of Review and Analysis

The standard for determining competency is whether a preponderance of the evidence establishes that the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam); see also United States v. Dockins, 986 F.2d 888, 892 (5th Cir. 1993) (stating that the Government bears the burden of establishing a defendant's competence by a preponderance of the evidence); see also 18 U.S.C. § 4241(d) (Whether after the hearing the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.)

The first report (finding Harris incompetent) was based on limited information: Harris was uncooperative with the evaluation process and unwilling to answer legally focused questions, making it difficult for the doctor to fully assess his competency. Docket 34, pg. 13. The second report was more comprehensive in that it incorporated additional factual information, such as Harris's phone calls, and the doctor had the benefit of a four-month evaluation, which was significantly more comprehensive than previous or subsequent evaluations. Courts have recognized that sustained evaluations in a Bureau of Prisons medical facility "provide the Court with a more complete picture of the defendant's mental competency" and "staff at these institutions are familiar with the *Dusky* standard of mental competence." United States v. Weston, 36 F. Supp. 2d 7, 13–14 & n. 11 (D.D.C. 1999) (citing Featherston v. Mitchell, 418 F.2d 582, 586 (5th Cir. 1969)).

Harris's four month forensic evaluation at the Springfield, Missouri facility was significantly more comprehensive than previous or subsequent evaluations. Despite Harris's deliberate uncooperative behavior during this time with medical doctors, he did not appear as mentally ill during his interactions with correctional staff, maintained good grooming, hygiene and room cleanliness, and did not routinely engage in disruptive or bizarre behavior (except for one verbal altercation). Id. Moreover, and perhaps most importantly, Harris was recorded having meaningful telephone conversations with family members in which he discusses "going through the process" to have his competency determined, and upcoming legal proceedings. During these telephone calls, Harris engages in meaningful communication with family members without difficulty, asks relevant questions, and responds appropriately.

After reviewing the evidence presented by both sides and weighing the experts' conclusions, the undersigned finds that the second medical report is more credible and reliable for the reasons discussed above. Based upon the second psychiatric report and the evidence presented at the hearing, the undersigned therefore concludes that the Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, and has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. 18 U.S.C. § 4241(d); see also Dusky v. United States, 362 U.S. 402, 80 (1960).

### III. Recommendation

The court should find the Defendant competent to stand trial because he understands the nature and consequences of the proceeding against him and is able to assist in his defense. See 18 U.S.C. § 4241. It is further recommended that the speedy trial time be excluded from June 6,

2012, until the date on which the District Judge signs the order adopting this report and recommendation.

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 10th day of October, 2013.

_____
Zack Hawthorn
United States Magistrate Judge